IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RICHARD DOUGLAS REINERT, JR., | CV 16-00154-BLG-JCL |
| Plaintiff, | |
| vs. | ORDER |
| DET. TUCKER, DET. KRIVITZ, and DET. RICHARDSON, | |
| Defendants. | |

This matter is before the Court on: (1) Plaintiff Douglas Reinert, Jr.'s Motion to Change John Doe to Danielle Perry, R.N. (Doc. 26); (2) Plaintiff Reinert's Motion for Sanctions (Doc. 27); (3) Defendants' Motion for Protective Order (Doc. 29); and (4) Defendants' Motions for Summary Judgment (Docs. 33, 37, and 41). Trial is scheduled to commence on June 4, 2018. (Doc. 15.)

Plaintiff Reinert's motion to amend and motion for sanctions are denied. Defendants' motions for summary judgment are granted and the motion for protective order is denied.

**I. Motion to Change John Doe to Danielle Perry, R.N.**

On March 2, 2018, Reinert filed a Motion to Change John Doe to Danielle Perry, R.N. at RiverStone Health Clinic whom he alleges denied him medical care

1

for four months while he was incarcerated at the Yellowstone County Detention Facility. (Doc. 26.)

Federal Rule of Civil Procedure 16(b) states that the pretrial scheduling order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). After a scheduling order has been entered, the court may modify the schedule only for good cause. Fed. R. Civ. P. 16(b)(4). Rule 16's good cause inquiry focuses primarily on the diligence of the party requesting the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

> Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension . . . Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

*Id.* (quotation marks and citations omitted).

The Court's Scheduling Order set the deadline for amending the pleadings as January 12, 2018 nearly a month before Reinert filed his motion to amend. The parties were specifically advised of Rule 16's "good cause" requirement in the

2

Scheduling Order which provided that the schedule would "not be modified except by leave of the Court upon a showing of good cause and only if a request is made before the expiration of the deadline at issue." (Doc. 15 at 1-2.)

Reinert has failed to demonstrate the existence of good cause that would warrant his untimely motion to amend. Reinert was well aware that RiverStone Health was the medical provider at Yellowstone County Detention Facility as he named RiverStone Health Clinic as a Defendant in his original complaint filed October 31, 2016. (Doc. 2.) And he specifically named the "Head Nurse of YCDF extension of RiverStone Health" as a Defendant in his Amended Complaint. (Doc. 6.) Reinert was advised in the Court's August 17, 2017 Order that the Court could not serve unnamed individuals without further information. He was given an opportunity to conduct discovery to determine the identities of any unknown defendants and was told to seek leave to file an amended complaint if he was successful in that regard. (Doc. 10 at 13-14.) There is no indication that Reinert made any attempt to utilize Fed.R.Civ.P. 45 to subpoena RiverStone Health Clinic to determine the identities of the individuals who he alleges denied him medical treatment at the Yellowstone County Detention Facility.[1]

---

[1] The Court notes that Reinert attached a copy of a December 1, 2017 letter to defense counsel to his disclosure statement seeking the name of the head nurse listed as John Doe. (Doc. 18 at 10.) However, counsel does not represent the County and does not represent RiverStone

Because Reinert has failed to make any showing of good cause to justify his untimely motion to amend, the motion is properly denied.

## II. Motion Requesting Sanctions on Defendants

Reinert seeks sanctions on Defendants based upon their alleged failure to collect evidence of Reinert's injuries and intoxication while he was in their custody. He alleges this loss of evidence prejudiced him in his criminal trial and would prejudice him in this civil matter. (Doc. 27.)

As Reinert was advised in the Court's August 17, 2017, his claims regarding Defendants' failure to document or catalogue his injuries cannot be addressed in this action. An inmate may not bring an action under § 1983 if its success would release the plaintiff from confinement or shorten its duration, *Preiser v, Rodriguez,* 411 U.S. 475, 500 (1973), or would necessarily imply the invalidity of the conviction or sentence, *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Where the plaintiff's success on a §1983 action would necessarily imply the invalidity of his underlying conviction or sentence, he must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order,

---

Health. Defendants represented in their disclosure statement that the names of the RiverStone Health personnel with knowledge of the facts of this case were unknown. (Doc. 19 filed January 5, 2018.) Furthermore, if Reinert believed Defendants failed to comply with discovery obligations his remedy was to file a motion to compel which he did not do. The Billings Police Department Defendants are not required to conduct Reinert's discovery for him.

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck,* at 487–88. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.* at 488.

Reinert alleges Defendants failed to catalogue his injuries on the night of his arrest in an attempt to deny him evidence to support his claim of innocence. According to his appellate brief filed with the Montana Supreme Court, Reinert was convicted of deliberate homicide on March 6, 2015. *State v. Reinert*, Montana Supreme Court No. DA 15-0669. That conviction is currently on appeal to the Montana Supreme Court and therefore has not been reversed.

To the extent Reinert is seeking sanctions based upon spoilation of evidence in this case, he has failed to establish a basis for sanctions. Although the "Ninth Circuit has . . . not set forth a precise standard for determining when [spoiliation] sanctions are appropriate," the majority of trial courts have adopted the following test: (1) "the party having control over the evidence had an obligation to preserve it at the time it was destroyed"; (2) "the records were destroyed with a culpable state of mind"; and (3) "the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or

5

defense." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F.Supp.2d 976, 989–90 (N.D.Cal.2012) (citations and internal quotations and brackets omitted); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir.2006) (outlining a similar test for determining when to "impos[e] the harsh sanction of dismissal") (citation and internal quotations omitted). The party seeking spoliation sanctions bears the burden of establishing each element. *Apple*, 888 F.Supp.2d at 989–90.

Reinert's motion does not indicate what evidence, if any, has been destroyed, by whom, for what reason, or how that evidence is relevant to support his claims. The motion will be denied.

### III. Motion for Protective Order

Defendants filed a motion for protective order regarding what they construed as Reinert's second set of discovery requests. (Doc. 29.) On March 19, 2018, Defendants filed a notice indicating that Reinert intended to withdraw the discovery request. (Doc. 47.) Defendants submitted a March 13, 2018 letter in which Reinert indicated that the document that Defendants construed as a second set of discovery was actually a "stray notes page that accidently made its way into my answers to your interrogatories. I never meant for you to receive that page." (Doc. 47-1 at 4.)

In light of Reinert's withdrawal of the document construed as a discovery

request, the motion for protective order will be denied as moot.

## IV. Motions for Summary Judgment

### A. Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477

U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. But "[a] plaintiff's verified complaint may be considered as an affidavit in opposition to summary

8

judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted).

**B. Pending Claims**

Reinert's remaining claims are: (1) alleged denial of medical care claim pursuant to the Fourteenth Amendment to the United States Constitution (Count

9

I); and (2) a substantive due process claim relating to an alleged failure to give *Miranda* warnings before conducting a custodial interrogation (Count II).

C. **Undisputed Facts**

In the late evening hours of December 21, 2013, Billings Police Officers responded to a 9-1-1 emergency distress call and found Reinert and his wife Danielle in their home with a 25-year old female, deceased from multiple gunshot wounds, who was later identified as Jessica Lee French Stephenson. (Defendants' Statements of Undisputed Facts, Docs. 34, 38, 42 ("SUF") at ¶ 1.)[2] Reinert was detained and transported to the Billings Police Department as the investigation continued in the early morning hours of December 22, 2013. (SUF at ¶¶ 2-3.)

Based upon the video taken in the interview room, Tucker entered the interview room at 1:26 a.m., introduced himself to Reinert, and asked him how he was doing. Reinert indicated that he needed to use the restroom and Tucker told him that they were going to get some things done and then would try and fulfill that request. (Exhibit G--Video of Interview Room #2, Conventionally filed as Docs. 44-46 ("Video") at 1:26:31 - 1:27:22 a.m.).[3] Tucker was in the interview

---

[2] Each Defendant filed a separate statement of undisputed facts but the paragraphs contained therein are identical.

[3] Each Defendant conventionally filed an identical copy of the video taken on December 22, 2013 of Interview Room #2. (Docs. 44-46.) Reinert represents that he was not able to view the video at issue. On February 21, 2018, the Court issued an Order requiring Defendants to

room for less than a minute and there was no further conversation between Tucker and Reinert at that time.

Detective Hallam entered the room at 1:36:28 and took a number of photographs of Reinert. Detective Hallam asked Reinert if he was hurt anywhere. Reinert indicated his wrists hurt. Hallam asked him if had any physical pain other than from the handcuffs. Reinert said he had to pee. Hallam then asked if Reinert was hurt anywhere, asking if he had any broken bones or anything like that. Reinert said other than my left leg being hurt and his right foot. He stated, "I can barely stand." Hallam asked how recent that injury was and Reinert stated "a little while ago." (Video, 1:38:15 - 1:39:10 a.m.) There is no further discussion of injuries on the video.

Tucker reentered the interview room at 1:58:14 and the following conversation was held between Reinert and Tucker:

Tucker: What I'm going to do is get a gun shot residue kit collected, just

---

"make arrangements for Reinert to view/listen to any audio/visual discovery that may not be permitted into the institution where he is incarcerated" before they could take his deposition. (Doc. 24 at 4.) Defendants responded to the Court's inquiry on this issue by stating that they attempted to make arrangements for Reinert to view the video but the facility where Reinert is incarcerated required extraordinary measures to allow such a viewing so Defendants concluded that they could not take Reinert's deposition. (Doc. 57.) Further, Defendants provided evidence that Reinert viewed the video during the course of his criminal trial. (Doc. 57-1.) The Court has viewed the video independently. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (holding that a videotape of undisputed validity should be treated as providing undisputed facts at summary judgment).

| | |
|---|---|
| | rubbing these little things on your hands just for gun shot residue. You ok with that. You have any issues with that? |
| Reinert: | No, I mean not unless I need to. |
| Tucker: | Well you do. We have an incident we are investigating involving firearms so therefore we need to collect this. |
| Reinert: | Where's my wife? |
| Tucker: | She's up here. |
| Reinert: | Ok. Can I urinate and then talk to her? |
| Tucker: | You can do this first and then urinate. |
| Reinert: | Where's my lawyer? |
| Tucker: | I don't know where is he? |
| Reinert: | I can call him? |
| Tucker: | Do you have one? |
| Reinert: | Yeah. |
| Tucker: | What's his name or her? |
| Reinert: | Him or her? |
| Tucker: | I don't know your attorney so I don't know if it's a male or a female. |
| Reinert: | Frank Myers. |
| Tucker: | Frank Myers, ok. |
| (Tucker leaves room–some conversation with other officer) | |
| Reinert: | Frank Myers–he's not here is he? |
| Tucker: | No he's not. |
| Reinert: | Can I urinate? |
| Tucker: | No I'm going to take this and then you can. |
| Reinert: | Well you know Frank Myers isn't here. |
| Tucker: | Ok, let me tell you something, ok the evidence that is potentially on your hands is very delicate and it doesn't last very long so I have exigent circumstances at this point to do this without an attorney and without your permission. |
| Reinert: | Who gave you that? |
| Tucker: | The State of Montana. |
| Reinert: | Oh. |
| Tucker: | The Supreme Court of the State of Montana. Ok? You understand? You're from Tallahassee? |
| Reinert: | I am. |
| Tucker: | I don't know how they work there but the State of Montana says I can do this under exigent circumstances and that's what we have here. |

| | |
|---|---|
| | Because you want to go to the bathroom, your probably going to try to wipe your hands and wash your hands and that potential evidence could be gone. Ok |
| Reinert: | Ok. |
| Tucker: | So that's what we are going to do. |
| Reinert: | So I'm not allowed my lawyer here? |
| Tucker: | Well you can call him here but right now I'm going to get this done because I'm going to get this done. Ok. |
| Reinert: | What do you mean, the State? |
| Tucker: | Its called exigency. |
| Reinert: | What is it? |
| Tucker: | Exigency |
| Reinert: | Exigency |
| Tucker: | Exigent circumstances, ok. |
| (conversation about wife) | |
| Reinert: | Where's my lawyer? |
| Tucker: | Probably in bed do you know what time it is, its two in the morning, he's probably sleeping. |
| Reinert: | I want to talk to him. Can we bring him here? |
| Tucker: | I'm going to do this now because I'm afraid you are going to try to destroy evidence on your hands. |
| Reinert: | I'm not going to destroy anything on my |
| Tucker: | Stand up. |

(Video 1:58:14 - 2:02:02 a.m.)

Detective Tucker then performed a gunshot residue test on Reinert since the deceased had died of multiple gunshot wounds. (SUF at ¶ 22, Video at 1:58:45 - 1:58:55 a.m.) Once the sample was obtained, Reinert was allowed to use the restroom at 2:05 a.m. (SUF at ¶ 23; Video at 2:05:19 a.m.)

When he returned from the restroom, Tucker asked Reinert several questions regarding his identification (name, address, phone, social security

13

number, vehicle, eye color, wife, employment). Tucker then read Reinert his *Miranda* rights which Reinert acknowledged in writing. (SUF at ¶ 24.) Thereafter, Reinert refused to answer any questions by Tucker. (SUF at ¶ 26.) Tucker advised Reinert he would be booked into the jail for deliberate homicide and he could call his attorney from there. (SUF at ¶¶ 27, 36.) Reinert was then transported by Officer Milam to the Yellowstone County Detention Facility and was placed in their custody. (SUF at ¶¶ 36, 37.)

**D. Discussion**

**1. Claims Conceded by Reinert**

Reinert concedes that Defendants Richardson and Krivitz should be dismissed from Count I. Accordingly, Defendants Richardson and Krivitz's motions for summary judgment as to Count I will be granted.

**2. Count I--Denial of Medical Care against Tucker**

The Ninth Circuit Court of Appeals recently confirmed that a pretrial detainee's Fourteenth Amendment claim for the denial of medical treatment must meet the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> (ii) those conditions put the plaintiff at substantial risk of suffering serious harm;
> (iii) the defendant did not take reasonable available measures to abate

that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
(iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, ___ F.3d. ___ (9th Cir. April 30, 2018)(2018 WL 1998296).

There is no evidence in the record to support these elements. First, there is no evidence to support Reinert's allegations that he made a request for medical care. In fact, Reinert admits he did not request medical care from Tucker. (Reinert's Statement of Disputed Facts, Doc. 50 at ¶ 28.) Reinert argues that he did inform other Billings Police Department employees of his injuries as can be seen in the video. But review of the video at issue reflects that Detective Hallam expressly asked Reinert if he had any physical injuries. Reinert first complained about his wrist and his need to urinate. It was only after Hallam probed further that Reinert mentioned that he was experiencing pain in his left leg and right foot. At no time did he make a request for medical care.

Secondly, Defendants dispute that Reinert in fact suffered from a serious medical need and therefore was not at substantial risk of suffering serious harm. Although Reinert asserts he was suffering from a concussion and a broken ankle, there exists no evidence that Reinert was diagnosed by a medical professional as

15

having a concussion or a broken ankle at the times relevant to his Complaint.  The initial medical examination conducted on Reinert was by a nurse with RiverStone Health the same day he was transferred into the YCDF.  The examination indicates no serious medical condition or injury that would require immediate medical attention.  (SUF at ¶ 38.)  Reinert disputes that this was a thorough examination but he failed to present any medical evidence to establish that he was suffering from a concussion or a broken ankle.  In fact, the first written request for medical for his ankle was made on January 17, 2014 nearly a month after the incident at issue.  (SUF at ¶ 39.)

Tucker testified that he had no knowledge that Reinert allegedly suffered from any serious medical condition or injury at the time that needed immediate medical care.  (SUF at ¶¶ 28, 30-31, 47-48, 53-57.)  Based upon the Court's review of the video from the interview room, Reinert never advised Tucker that Reinert was in need of any immediate medical care during his brief detainment on December 22, 2013.  (SUF at ¶¶ 32-35, 52-57.)  Reinert presented no evidence that he requested medical care from Defendant Tucker and therefore he cannot establish that Tucker failed to obtain or provide medical care even though a reasonable official in the circumstances would have appreciated the high degree of risk involved.  Tucker's motion for summary judgment on Count I will be granted.

16

### 3. Count 2--Failure to Give *Miranda* Warnings

In Count II, Reinert alleges Defendants failed to timely advise him of his *Miranda* rights and denied his requests to speak with an attorney. The mere failure to read a suspect Miranda warnings, without more, does not state a claim under the Fifth Amendment. *See Chavez v. Martinez*, 538 U.S. 760, 772, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) (plurality opinion); *see also United States v. Shetler*, 665 F.3d 1150, 1160 n. 4 (9th Cir.2011) ("[O]btaining a confession without Miranda warnings is not in itself unconstitutional; only use of the confession during criminal proceedings violates the Fifth Amendment . . . ")

However, under certain circumstances, the failure to give *Miranda* warnings before conducting a custodial interrogation may be actionable under Section 1983 as a violation of substantive due process even if statements obtained in violation of *Miranda* are not used in court. *See California Attorneys for Criminal Justice v. Butts*, 195 F.3d 1039, 1045 (9th Cir. 1999); *Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir. 1992). The evidence in this case does not, however, support any such claim.

In *Rochin v. California*, 342 U.S. 165, 172 (1952), the Supreme Court held that convictions based on evidence obtained by methods that are "so brutal and so offensive to human dignity" that they "shoc[k] the conscience" violate the Due Process Clause of the Fourteenth Amendment. In *Chavez*, the Court recognized

that official conduct "most likely to rise to the conscience-shocking level" is "conduct intended to injure in some way unjustifiable by any government interest." *Chavez*, 538 U.S. at 774 (*citing County of Sacramento. v. Lewis*, 523 U.S. 833 (1998)). The standard for showing such a violation is "quite demanding," and "a Fourteenth Amendment claim of this type is cognizable only if the alleged abuse of power 'shocks the conscience' and 'violates the decencies of civilized conduct.' " *Stoot v. City of Everett*, 582 F.3d 910, 928 (9th Cir. 2009) (*quoting County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Here, there was no interrogation prior to Tucker reading Reinert's his Miranda warnings. Reinert argues that Tucker conducted the gun residue test prior to giving *Miranda* warnings but the gun residue test was not testimonial. Physical evidence like fingerprinting, gunshot residue, and blood samples, is not testimonial and thus does not implicate Fifth Amendment concerns regarding a defendant's right against self-incrimination. *Schmerber v. State of California*, 384 U.S. 757, 764-65 (1966).

In addition, there is no evidence of conscience-shocking treatment or intent to harm Reinert. As the video of this incident indicates, Reinert sat in an interview room for approximately an hour and forty minutes. He slept during most of this time. Although he made multiple requests to use the restroom, the Court has

already determined that the denial of a restroom for such a short period of time fails to rise to the level of a constitutional violation. (Doc. 10 at 9-12.)

There is no evidence to establish a Fourteenth Amendment substantive due process claim under the facts presented in this case. Summary judgment is appropriate on Count II.

## V. Conclusion

There is a complete lack of a genuine issue of material fact regarding whether Defendants violated Reinert's Fourteenth Amendment substantive due process rights with regard to his medical needs or his brief detainment at the Billings Police Department on December 22, 2013. Reinert's claims fail as a matter of law.

Based upon the foregoing, the Court issues the following:

**ORDER**

1. Reinert's Motion to Change John Doe to Danielle Perry, R.N. (Doc. 26) is DENIED.

2. Reinert's Motion for Sanctions (Doc. 27) is DENIED.

3. Defendants' Motion for Protective Order (Doc. 29) is DENIED AS MOOT.

4. Defendant Richardson's Motion for Summary Judgment (Doc. 33) is

GRANTED.

5. Defendant Krivitz's Motion for Summary Judgment (Doc. 37) is GRANTED.

6. Defendant Tucker's Motion for Summary Judgment (Doc. 41) is GRANTED.

7. The Clerk of Court is directed to vacate all pending deadlines and the trial date, close the case, and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

8. The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit.

DATED this 8th day of May, 2018.

                                       /s/ Jeremiah C. Lynch
                                       Jeremiah C. Lynch
                                       United States Magistrate Judge